Raoul J. Severo, Esq. (SBN: 78104)
Grenville Pridham, Esq. (SBN: 120695)
SEVERO, PLC
500 N. Central Avenue, Ste. 610
Glendale, CA 91203
Telephone: (855) 216-3990
(714) 486-5144

Attorneys for Defendant,
Valerie L. Tolmosoff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VALERIE L. TOLMOSOFF,<br><br>Defendant. | Case No. 6:23-po-00187-HBK<br><br>**NOTICE OF MOTION TO SUPPRESS AND MOTION TO DISMISS CITATION UNDER THE SECOND AMENDMENT, MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: January 10, 2024<br>Time: 10:00 am<br>Judge: Hon. Helena M. Barch-Kuchta |

**TO: PHILLIP TALBERT, UNITED STATES ATTORNEY; JEFFREY SPIVAK AND CHAN HEE CHU, ASSISTANT UNITED STATES ATTORNEYS; AND SEAN ANDERSON, YOSEMITE LEGAL OFFICER, COUNSEL FOR PLAINTIFF:**

**PLEASE TAKE NOTICE** that on January 10, 2024, or as soon thereafter as this matter can be heard, in the Eastern District of California, before the Honorable Helena Barch-Kutcha, defendant VALERIE TOLMOSOFF, through counsel Grenville Pridham, will move this Court for an order dismissing the citation in this case.

This motion is made pursuant to the United States Constitution, including the Second Amendment; Federal Rule of Criminal Procedure Rule 12(b); Eastern District of California Local Rule 430.1; and all applicable statutes and case law. This motion is supported by this Notice of Motion; the Memorandum of Points and Authorities; the

record of this case; and such argument and further law and evidence as may be presented at the time of the hearing.

Date: November 17, 2023

Respectfully submitted,

SEVERO, PLC

/s/ Grenville Pridham
GRENVILLE PRIDHAM
Attorney for Defendant
Valerie Tolmosoff

# MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Factual Background

On January 16, 2023, at approximately 12:30 p.m., Ranger J. Fey approached a vehicle parked on the far-left side of Northside Drive in Yosemite Valley. Ranger J. Fey approached on foot and contacted two females, Hernandez, who was standing in the snow about 6 feet away from the vehicle and the defendant, Miss Tolmosoff, who was standing near the water, approximately 20 yards away from the car.

The road was snow packed and the vehicle was pulled over to the left as far as it could safely go without getting stuck in a snowbank, which had been created, presumably, by a snowplow.  The tracks in the snow indicated that all cars were travelling in the lane to the far right.  Although the left lane had been plowed, it was not being regularly used and appeared to be like a shoulder to the right lane that was obviously used as evidenced by the clear and distinct tire track lines in the snow.  There was still an accumulation of snow on the left side, which caused people not to use that lane.

As the Ranger approached the women, he stated that he smelled the odor of marijuana in the air and coming from the vehicle, even though;

1)   he was several yards behind Miss Tolmosoff's car,

2)   all of the windows were rolled up,

3)   the trunk was closed, and

4)   the two rolled joints he found were inside of a tin, inside of a luggage bag, packed with clothes, inside the shut trunk.  Additionally, the items in the trunk were not readily reachable from inside the sedan.

Under these facts, Ranger Fey would require the olfactory senses of a canine to be able to smell any cannabis coming from within the motor vehicle.  At best, Ranger Fey's statement that he could smell marijuana coming from within the car was a gross exaggeration; at worst, it was a bold-faced lie.

Defendant Valerie Tolmosoff ("Miss Tolmosoff") was the owner of the motor vehicle.

Miss Tolmosoff was not smoking cannabis when the Ranger approached, and she volunteered that she had not smoked because she was seeking employment as a truck driver and subject to random

drug testing.

Only Miss Tolmosoff's passenger had smoked a cannabis joint, but she finished smoking before the Ranger approached the women, who were both outside of the closed motor vehicle. After telling the women that he smelled the odor of cannabis, Ranger Fey then informed the women that he was going to search the vehicle. Miss Tolmosoff never consented to a search of the motor vehicle.

The interaction, per Ranger Fey's camera, lasted almost one hour; approximately fifty-two minutes, and thirty seconds before Ranger Fey said the women could get into their car.

Defendant Valerie Tolmosoff ("Tolmosoff") is charged in a one-count citation with carrying or possessing a loaded weapon in a motor vehicle in violation of 36 CFR 2.4(c). (Doc. 1.) Tolmosoff moves to dismiss the single-count citation based on *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, ___ U.S. ___, 142 S. Ct. 2111 (2022), and *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023), because 36 CFR 2.4(c) is unconstitutional as applied to her.

The Government cannot meet its burden under the standard announced in *Bruen* and applied in *Range*. As applied to Tolmosoff, the Government cannot establish that 36 CFR 2.4(c) is consistent with the Nation's "historical tradition of firearm regulation."

**II.   This Court must suppress all evidence obtained as the result of the warrantless search of the vehicle.**

"The Fourth Amendment guarantees the right of citizens to be free from unreasonable governmental searches." *United States v. Caseres*, 533 F.3d 1064, 1069 (9th Cir. 2008) (citing U.S. Const. amend. IV). In *Riley v. California*, 134 S. Ct. 2473 (2014), the United States Supreme Court explained that a judicial warrant is generally required to satisfy the Fourth Amendment's reasonableness requirement. Id. at 2482. This is because "a warrant ensures that the inferences to support a search are 'drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" Id. (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)). "Warrantless searches by law enforcement officers 'are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Cervantes*, 703 F.3d 1135, 1138-39 (9th Cir. 2012) (quoting *Katz v. United States*, 389 U.S.

347, 357 (1967)). "Because warrantless searches . . . are per se unreasonable, the government bears the burden of showing that a warrantless search . . . falls within an exception to the Fourth Amendment's warrant requirement." Id. at 1141 (citing *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)); accord *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012). Under the exclusionary rule, evidence obtained in violation of an individual's Fourth Amendment rights, including any "'fruit of the poisonous tree,'" is excluded from a criminal trial. *Cervantes*, 703 F.3d at 1143; see also *Alderman*, 394 U.S. at 171 ("The exclusionary rule . . . excludes from a criminal trial any evidence seized from the defendant in violation of his Fourth Amendment rights. Fruits of such evidence are excluded as well." (citations omitted).

In this case, the rangers did not obtain a warrant prior to searching the vehicle that Miss Tolmosoff and her passenger were in. Thus, the search is per se unreasonable, and the government bears the burden of proving that the search falls within one of the "well-delineated exceptions" to the warrant requirement. *Cervantes*, 703 F.3d at 1139 (quoting *Katz*, 389 U.S. at 357) (internal quotation mark omitted).

Presumably, the government intends to rely on the "automobile exception," as established in *Carroll v. United States*, 267 U.S. 132 (1925). Under the "automobile exception," a law enforcement officer may conduct a warrantless search of a "readily mobile" vehicle if "probable cause exists to believe it contains contraband." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). Probable cause exists if "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

For three separate reasons, the rangers lacked probable cause to search the vehicle that Miss Tolmosoff drove. First, Ranger Fey exceeded the scope of the traffic stop's justifying purpose by digressing into questioning about weapons and drugs—which proximately caused Miss Tolmosoff's passenger to admit she had a small amount of marijuana in the vehicle. Binding precedent is clear that such a digression, however short in duration, is an unreasonable extension of a traffic stop.

Second, even if the Ranger Fey lawfully obtained the probable cause to look for a small amount of marijuana, that probable cause was extinguished as soon as the ranger found the two cannabis joints

in the tin. Controlling precedent is clear that once the object of probable cause is found, law enforcement must stop their search, unless they have additional probable cause.

Lastly, suspicion of marijuana possession is not a valid basis for probable cause in light of marijuana's effective decriminalization.

**A.     The search was unconstitutional due to prolonging of the traffic stop.**

It is well established that law enforcement may not "extend a traffic stop with tasks unrelated to the traffic mission, absent independent reasonable suspicion." *United States. v. Willie Williams*, No. 22-10052, 2023 WL 5925893, *1 (9th Cir., Sep. 12, 2023) (unpublished) (quoting *United States v. Landeros*, 913 F.3d 862, 866 (9th Cir. 2019)). A "traffic mission" is "limited to addressing the traffic violation that warranted the stop and attending to safety related concerns." Id. (internal citations removed); *United States v. Evans*, 786 F.3d 779, 785 (9th Cir. 2015); *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Tasks not related to the traffic mission are "unlawful if they add time to the stop and are not otherwise supported by independent reasonable suspicion of wrongdoing." *Landeros*, 913 F.3d at 866 (quoting *Rodriguez*, 575 U.S. at 357) (internal citations removed).

Applying this law, the Ninth Circuit further held that a traffic stop investigating the possibility of a stolen vehicle does not justify law enforcement asking, "questions about consent to search a car and marijuana possession" because such a digression is "not sufficiently tailored to determining whether a car has been stolen." *Williams*, 2023 WL 5925893, at *2. The facts in this case are materially indistinguishable from *Williams*. In *Williams*, the officers initiated a stop "upon observing that the brake lights of Williams's car were not functioning." *Williams*, 2023 WL 5925893, *1. The government argued that the mission also included an investigation into whether the vehicle was stolen, as there was no registration information available during the initial records check.

But, as the Ninth Circuit pointed out, "the officer's consent and marijuana inquiries came after the objective evidence revealed that Williams was the car's registered owner" because the officer had "reviewed Williams's registration card, which matched the car's license plate and listened Williams as the registered owner of the car." Id.

In this case, Ranger Fey said that he stopped because Miss Tolmosoff's car was apparently sticking out into the lane of travel, even though the weather conditions at the time precluded the left lane

from really being a lane of travel.  Ranger Fey then claimed that he smelled the odor of cannabis coming from within the motor vehicle as he approached Miss Tolmosoff and her passenger, who were standing several yards away from the vehicle.

It was reasonable for Ranger Fey to request license, registration, and insurance.  It was not reasonable for Ranger Fey to ask Miss Tolmosoff if she had any drugs in the car because he did not witness her smoking cannabis and she informed him that she had not been smoking anything.

The questioning by Ranger Fey prolonged the interaction several minutes before he asked for Miss Tolmosoff's driver's license, registration and insurance.  This in turn resulted in continued questioning and a complete search of the vehicle for the better part of an hour.

Just as in *Williams*, Ranger Fey's "unrelated consent and marijuana inquires added time to the stop." 2023 WL 5925893 at *2. The inquiry in *Williams* that the Ninth Circuit found unconstitutional digression about marijuana and law enforcement's communication regarding whether to proceed to search added "nearly three minutes to the stop." Id. Certainly if nearly three additional minutes to a traffic stop is impermissible, the even longer time leading up to the search in this case did, too. The entire mission of the traffic stop was about the back end of the car purportedly sticking out into a lane of travel.  However, the snow and the berm, created by the snowplow, had made travel in the left lane almost impassable and caused drivers to avoid, as all of the tire track trails were in the right lane of travel.  Miss Tolmosoff's car was more than six feet away from the lane that the cars were taking because of the snow.

Ranger Fey lacked any independent basis, other than the passenger's answer, to establish probable cause of marijuana possession.  Although Ranger Fey stated he smelled cannabis, he most definitely could not have smelled anything coming from within a car, which had closed windows, a closed trunk, and had only two cannabis joints in the closed trunk, that were wrapped in some type of paper wrapper, inside a tin box, and inside a luggage bag that was packed with clothes all around it.

The question about marijuana appears to be part of the rangers' standard questioning, along with questions about firearms and large knives, which is unrelated to the mission of the underlying traffic stop.

Because the digression into drugs and marijuana was not justified by the reasonable suspicion

that justified the underlying traffic stop, Officer Fey violated the Fourth Amendment by prolonging the traffic stop — however briefly — to make her inquiry and obtain the passenger's admission. *See Rodriguez*, 575 U.S. at 357; *United States v. Nault*, 41 F.4th 1073, 1077 (9th Cir. 2022) (a thirty-second delay unrelated to the original mission of the stop is an unreasonable seizure absent reasonable suspicion). The "exception to the warrant requirement established in *Carroll* . . . applies only to searches of vehicles that are supported by probable cause." *Holston v. U.S.*, 633 A.2d 378, 384 (D.C. Cir. 1993) (quoting *U.S. v. Ross*, 456 U.S. 798, 809 (1982)).

This Court should suppress all evidence obtained in violation of the Fourth Amendment as part of this warrantless vehicle search.

**B.    The search was unconstitutional as an excessive automobile search after finding the suspected contraband.**

The second problem with the search in this case is that the Ranger had no reason to believe that the owner and driver of the car had cannabis or contraband; there was no cannabis or contraband found in the interior of the sedan, and the Ranger quickly found the two joints that the passenger told him she had; and Miss Tolmosoff never consented to the search.

The two joints, containing a small amount of marijuana — were exactly what Ranger Fey believed he had developed probable cause to find under binding precedent. This means that the rangers had to end their search, unless they had additional probable cause. Because there was no such independent probable cause, the evidence discovered in this case during the search that proceeded after the discovery of the two joints must be suppressed.

The scope of the search permitted under the automobile exception is limited in that the officer may search only those areas of the automobile where there is probable cause to believe that contraband or evidence will be found. *See California v. Acevedo*, 500 U.S. 565, 580 (1991), ("The facts in the record reveal that the police did not have probable cause to believe that contraband was hidden in any other part of the automobile and a search of the entire vehicle would have been without probable cause and unreasonable under the Fourth Amendment."); *see also United States v. Ross*, 456 U.S. 798, 824 (1982) ("The scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found.").

The duration of the search is also limited — that is, the officer may search the automobile only until the contraband or evidence that the officer has probable cause to believe is in the vehicle is located. *See Horton v. California*, 496 U.S. 128, 141 (1990) (noting that if a warrant authorizes a search for specific items and such items are found "at the outset" or the defendant produces the items to the law enforcement officers, the search must then cease) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 517 (1971) (White, J., dissenting)); *see also Ross*, 456 U.S. at 825 (noting that a search conducted pursuant to the automobile exception can be "no broader and no narrower than a magistrate could legitimately authorize by warrant"). Once the contraband or evidence is found, an officer must terminate the search absent probable cause to believe that additional contraband or evidence will be found. *See Horton*, 496 U.S. at 141.

In this case, Ranger Fey had probable cause to believe that there was a small amount of marijuana in the vehicle, as shown by the passenger's admission to having a "little bit" of marijuana. Ranger Fey did not have probable cause to believe that there was additional contraband or evidence in the vehicle. The Ninth Circuit has been clear "that probable cause to believe that some incriminating evidence will be present at a particular place does not necessarily mean there is probable cause to believe that there will be more of the same." *United States v. Weber*, 923 F.2d 1338, 1344 (9th Cir. 1990). This is a well-established principle limiting intrusive searches.

For example, in *United States v. Nora*, 765 F.3d 1049, 1051, 1059 (9th Cir. 2014), law enforcement officers obtained a search warrant to search a house for a firearm after they observed the defendant, who had two prior felon-in-possession convictions, carrying a firearm into the house, and then leaving the house without the firearm. *Id*. at 1051. The search warrant authorized the officers to search for "firearms," rather than the single firearm the officers had observed the defendant carrying into the house. *Id*. The Ninth Circuit, citing *Weber*, concluded that the search warrant was overbroad, as "the officers' firsthand observations of [the defendant] with a gun in his hand did not give them reasonable grounds to believe that any additional firearms would be found in the house." *Id*. at 1059.

Here, Ranger Fey had probable cause to believe that Miss Tolmosoff's passenger possessed a small amount of marijuana within the vehicle. This alone did not give the officers probable cause to believe that there was additional marijuana — or other controlled substances — or contraband — in the

vehicle.  In fact, Miss Tolmosoff's passenger volunteered that the cannabis was in her blue bag, which is exactly where Ranger Fey found the two cannabis joints in a tin.

Ranger Fey had no probable cause to believe that Miss Tolmosoff had any cannabis or contraband.  Miss Tolmosoff had not smoked while she was looking at the water.  Only her passenger had been smoking, and the passenger apparently finished smoking before Ranger Fey even arrived.

Still, Ranger Fey spent more than 50 minutes searching the passenger compartment and every nook and cranny of the vehicle and its contents. Accordingly, the rangers exceeded the limits on both the scope and duration of the automobile exception by engaging in a general search of the vehicle.

Accordingly, this Court should suppress the evidence found in violation of the Fourth Amendment as a result of this extended search.

**C. De Facto Federal Decriminalization of Marijuana Negates Probable Cause for a Search.**

Lastly, apart from the prior constitutional infirmities, the evidence in this case must be suppressed because there was no probable cause to believe that any crime was committed relating to marijuana.  Nobody was charged with possession or any drug offense in this case. The reason for this stems from the October 2022 presidential proclamation that simple possession of marijuana offenses would be pardoned.  Since then, citations for simple possession of marijuana have been very rarely given, and even more rarely enforced throughout federal lands.  Though marijuana remains federally illegal, due consideration should be given to the fact that the area surrounding the federal land where the Miss Tolmosoff and her passenger found themselves — California — is a state where marijuana has been legal for over two-and-a-half decades medicinally and nearly seven years recreationally. (See, generally https://cannabis.ca.gov/cannabis-laws/laws-and-regulations/).

The widespread decriminalization of marijuana — and the recent push federally to reclassify it from a Schedule I drug — call into question the reasoning of the cases that hold that marijuana provides reasonable suspicion for a warrantless vehicle search. The *Carroll* Doctrine was based on the idea that there was a difference "as to the necessity for a search warrant between [contraband] when concealed in a dwelling house or similar place, and like [contraband] in course of transportation and concealed in a moveable vessel where they readily could be put out of reach of a search warrant." *Carroll*, 267 U.S. at

151. The movability of the vehicle, such that it could carry away the potential contraband before a warrant could issue, being the crux of the issue. So, when the "contraband" at issue is a "little bit of marijuana," for which the Rangers would not have actually sought a warrant anyway, even if it had been in a home instead of a vehicle, the reason for the Carroll doctrine ceases to exist. The rangers would not, and did not, issue a citation for simple marijuana possession, and even if they had, the government likely would not have enforced it anyway. So, if the substance allegedly giving rise to "reasonable suspicion" that the "automobile . . . contains that which by law is subject to seizure and destruction" Carroll at 149, is not in fact treated as such, it cannot possibly give the rangers probable cause to search the entirety of the vehicle. This Court should therefore suppress all evidence obtained as a result of this unlawful warrantless search.

**III.    This Court must suppress all statements obtained in violation of Miss Tolmosoff's Fifth Amendment Rights, as interpreted in *Miranda*.**

Regardless of the validity of the search, this Court must suppress Miss Tolmosoff's and her passenger's statements made in response to the rangers' questioning because their statements were the fruit of a custodial interrogation and Miss Tolmosoff and her passenger were not provided Miranda warnings.

The government may not use a defendant's statements against her at trial "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Specifically, where a person is in custody and being questioned, any statement made to law enforcement is admissible only if the person was first advised of his right to remain silent, that any statement he does make may be used as evidence against him, that he has the right to the presence of an attorney, and that, if he is unable to afford to hire an attorney, an attorney will be appointed. Id.

"To determine whether an individual was in custody, a court must, after examining all of the circumstances surrounding the interrogation, decide 'whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002) (quoting <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994)) (alteration in original). In other words, the court "must determine whether 'the officers established a setting from

U.S. v. TOLMOSOFF
Case No. 6:23-po-00187-HBK

which a reasonable person would believe that he or she was not free to leave.'" Id. at 973-74 (quoting *United States v. Beraun-Panez*, 812 F.2d 578, 580 (9th Cir. 1987)). In making this determination, courts consider various factors, including: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Beraun-Panez*, 812 F.2d at 580 (citing *United States v. Wauneka*, 770 F.2d 1434, 1438 (9th Cir. 1985)).

Typically, "the roadside questioning of a motorist detained pursuant to a routine traffic stop [is not] considered 'custodial interrogation,'" as traffic stops are "temporary and brief," public, and usually involve only one or two law enforcement officers. *Berkemer v. McCarty*, 468 U.S. 420, 435, 437-39 (1984). Nevertheless, "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." Id. at 440.

In this case, what may have begun as a "routine traffic stop" that presumably was expected to be "temporary and brief," *Berkemer, supra*, escalated into a greater restraint on Miss Tolmosoff's freedom of movement, such that he was entitled to the "full panoply of protections prescribed by *Miranda*." *Id*. at 435, 440. Unlike the typical traffic stop envisioned in *Berkemer*, the rangers spent almost one hour questioning Miss Tolmosoff and her passenger and searching Miss Tolmosoff's car. The rangers searched each of their person and declined to let them leave for over 50 minutes while the vehicle was searched, and citations were issued. Ranger Fey was in possession of Miss Tolmosoff's and her passenger's driver's licenses for the duration of the vehicle search.

Although none of the vehicle's occupants were handcuffed, the Rangers instructed them to stand, in the cold, on the side of the road for the duration of the vehicle search. After the first five minutes of the fifty-three-minute-long encounter, there were two rangers present. At least one ranger stood watch over Miss Tolmosoff and her passenger, who remained on the side of the road as instructed, while Ranger Fey searched the vehicle.

Under the circumstances, as soon as it became clear that the traffic stop would turn into a drug investigation beyond an initial inquiry into ownership of the car and who was driving, a reasonable

person in the position of any of the occupants would have understood that he was not free to leave. (See, *e.g., United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997) ("When a law enforcement official retains control of a person's identification papers . . . longer than necessary to ascertain that everything is in order, and initiates further inquiry while holding on to the needed papers, a reasonable person would not feel free to depart.).

Thus, Miss Tolmosoff was unquestionably "in custody" for purposes of *Miranda* — if not when she was advised by Ranger Fey that he was going to search the vehicle — then at the latest when he instructed Miss Tolmosoff to walk about 40 feet in front of her car with the other Ranger.

Because the rangers did not read Miss Tolmosoff her *Miranda* rights, this Court must enter an order that all statements of Miss Tolmosoff and her passenger, in response to any of the ranger's questions while they were in their custody are excluded from trial. Accordingly, this Court must exclude from trial all of Miss Tolmosoff's and her passenger's un-Mirandized statements.

### IV. PURSUANT TO *BRUEN* 36 CFR 2.4(C) IS UNCONSTITUTIONAL AS APPLIED TO TOLMOSOFF.

The court should dismiss the 36 CFR 2.4(c) charge of carrying or possessing a loaded weapon in a motor vehicle because 36 CFR 2.4(c) regulates Second Amendment conduct; and the Government cannot show that 36 CFR 2.4(c) is consistent with the Nation's "historical tradition of firearm regulation." (*Id.*)  Historically, persons were allowed to carry loaded weapons while in transit.  See numerous histories about pioneers and wagon trains moving west across the United States.  In contrast, 36 CFR 2.4 only appeared in 48 FR 30282 on June 30, 1983: just 50 years ago.  Compared to our country's 247-year history, this regulation is a mere teenager.

In *Range* the Third Circuit went so far as to hold that it is unconstitutional to prohibit felons from possessing a firearm.  The Government cannot meet its burden of establishing that 36 CFR 2.4(c) comports with the Nation's "historical tradition of firearm regulation," given that the *Range* court rejected the notion that felons are not one of the people protected by the Second Amendment. Additionally, other courts are beginning to follow *Bruen*, as illustrated by a Pennsylvania District Court's decision in *United States v. Aqudre Quailes*, _F. Supp. 3d __, No. 1:21-CR-0176, 2023 WL 5401733 (M.D. Pa. Aug. 22, 2023), finding federal "felon-in-possession" law unconstitutional.

An analysis with the text of the Second Amendment and a brief explanation of the recent, significant developments in Second Amendment precedent from the Supreme Court and the Third Circuit Court of Appeals shows that precedential decisions in *Bruen* and *Range* demand that the citation be dismissed.

### A. THE TEXT OF THE SECOND AMENDMENT AND SIGNIFICANT RULINGS ON THE SECOND AMENDMENT

The text of the Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

From 1939 to 2008, the Second Amendment was interpreted in accordance with *United States v. Miller*, 307 U.S. 174 (1939). In *Miller*, the Supreme Court focused on the history and meaning of the word "Militia" in the context of the Second Amendment. The Court observed that the Constitution, as originally adopted, granted Congress the power "'To provide for calling forth the Militia to execute the Laws of the Union.'" *Miller*, 307 U.S. at 178 (quoting U.S. CONST. art. 1, § 8). The Court then held: "With obvious purpose to assure the continuation and render possible the effectiveness of such forces the declaration and guarantee of the Second Amendment were made. It must be interpreted and applied with that end in view." *Id.* This Militia-based rationale for the Second Amendment held sway for 70 years. *See United States v. Bullock*, No. 3:18-CR-165, 2023 WL 4232309, at *6 (S.D. Miss. June 28, 2023) (discussing scholarly articles regarding *Miller*).

Then, in 2008 and 2010, the Supreme Court decided *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010), resulting in a significant change in our understanding of the Second Amendment. In those decisions, the Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 142 S. Ct. at 2122 (citing *Heller*, 554 U.S. at 570; *McDonald*, 561 U.S. at 742). And then, in 2022, the Court held in *Bruen* "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* Following the holdings of *Heller*, *McDonald*, and *Bruen*, the Nation now understands that the Second Amendment establishes an individual right to keep and bear arms that does not depend on service in the militia.

In the years following *Heller* and *McDonald*, "the Courts of Appeals . . . coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Id.* at 2125. In *Bruen*, the Court rejected the two-step framework that had developed, and detailed the correct standard to be applied to Second Amendment challenges. *Id.* at 2126–34. The Court explained that the correct standard is as follows:

> In keeping with *Heller*, the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)). The Court provided some guidance as to how courts are to assess whether a modern firearm regulation is consistent with historical tradition. The Court observed first that when analyzing a modern firearm regulation that addresses a "general societal problem that has persisted since the 18th century":

> [T]he lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional. And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality. *Id.* at 2131.

On the other hand, when analyzing a modern firearm regulation that was "unimaginable" during the founding era, the Court instructs:

> [T]his historical inquiry that courts must conduct will often involve reasoning by analogy — a commonplace task for any lawyer or judge. Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are "relevantly similar."

*Id.* at 2132 (citation omitted).  In order to ascertain whether regulations are "relevantly similar," the Court notes that "*Heller* and *McDonald* point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133.  The Court explains that the burden on the Government is to identify a "well-established and representative historical *analogue*, not a historical *twin*.  So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.*

Here, Miss Tolmosoff had a firearm in a bag, locked inside the trunk of the car.  It was not accessible from within the passenger compartment of the car and posed no threat to anyone.  Accordingly, Miss Tolmosoff respectfully requests that the citation be dismissed.

Date: November 17, 2023                          Respectfully submitted,

                                                 SEVERO, PLC

                                                  */s/ Grenville Pridham*
                                                 GRENVILLE PRIDHAM
                                                 Attorney for Defendant
                                                 Valerie Tolmosoff