PHILLIP A. TALBERT
United States Attorney
SEAN O. ANDERSON
NATIONAL PARK SERVICE
LEGAL OFFICE
P.O. Box 517
Yosemite, California 95389
CHAN HEE CHU
Assistant United States Attorney
MISDEMEANOR UNIT
2500 Tulare Street, Suite 4401
Fresno, California 93721
Telephone: (559) 497-4000

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>VALERIE L. TOLMOSOFF,<br>Defendants. | Case No. 6:23-po-00187-HBK<br><br>Date: January 10, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Helena M. Barch-Kuchta |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

## TABLE OF CONTENTS

**I. BACKGROUND** .......... 2

II. LEGAL STANDARD .......... 5

A. Fourth Amendment .......... 5

B. Fifth Amendment .......... 6

III. ARGUMENT .......... 7

A. The Search of Ms. Tolmosoff's Vehicle Falls within the Automobile Exception .......... 7

1. Ninth Circuit Binding Caselaw Allows Officers to Ask about Weapons During a Traffic Stop .......... 8

2. The Odor of Marijuana provided independent basis to prolong the Traffic Stop and Conduct a Vehicle Search .......... 9

3. Defendant's "Excessive Search" Argument is Meritless .......... 12

B. Defendant Failed to Meet His Burden of Demonstrating Custodial Interrogation .......... 14

1. Defendant Does Not Even Attempt to Demonstrate Interrogation .......... 14

2. Defendant was not in Custody .......... 14

3. Defendant's Arguments to the Contrary are Unpersuasive .......... 18

IV. CONCLUSION .......... 20

## TABLE OF AUTHORITIES

Page

**CASES**

*Arizona v. Johnson*,
555 U.S. 323 (2009) .... 8

*Berkemer v. McCarty*,
468 U.S. 420 (1984) .... 18

*California v. Acevedo*,
500 U.S. 565 (1991) .... 7

*Gill v. City of Murrieta*,
2011 WL 333071 (C.D. Cal. Jan. 26, 2011) .... 11

*In re Aiken Cnty.*,
725 F.3d 255 (D.C. Cir. 2013) .... 10

*Kentucky v. King*,
563 U.S. 452 (2011) .... 5

*Martinez v. Cate*,
903 F.3d 982 (9th Cir. 2018) .... 13

*Rakas v. Illinois*,
439 U.S. 128 (1978) .... 5

*United States v. Abbassi*,
801 F. App'x 484 (9th Cir. 2020) .... 16

*United States v. Anthony*,
330 F. App'x 661 (9th Cir. 2009) .... 14

*United States v. Arboleda*,
633 F.2d 985 (2d Cir. 1980) .... 6

*United States v. Bassignani*,
575 F.3d 879 (9th Cir. 2009) .... passim

*United States v. Bassignani*,
560 F.3d 989 (9th Cir. 2009) .... 6

*United States v. Bowie*,
726 F. App'x 625 (9th Cir. 2018) ........................................................ 5

*United States v. Brobst*,
558 F.3d 982 (9th Cir. 2009) ........................................................ 16, 18

*United States v. Brooks*,
772 F. App'x 573 (9th Cir. 2019) ........................................................ 15

*United States v. Butler*,
249 F.3d 1094 (9th Cir. 2001) ........................................................ 18

*United States v. Castillo*,
312 F. App'x 891 (9th Cir. 2009) ........................................................ 15, 16

*United States v. Chelgren*,
2010 WL 3210839 (E.D. Cal. Aug. 10, 2010)........................................................ 8

*United States v. Chong*,
2015 WL 5156438 (C.D. Cal. Sept. 2, 2015), *aff'd in part,*
720 F. App'x 339 (9th Cir. 2017) ........................................................ 18

*United States v. Collins*,
2018 WL 306696 (N.D. Cal. Jan. 5, 2018), *aff'd*,
827 F. App'x 721 (9th Cir. 2020) ........................................................ 13

*United States v. Cuesta*,
2007 WL 2729853, at *9 (E.D. Cal. Sept. 19, 2007), *aff'd*
286 F. App'x 358 (9th Cir. 2008) ........................................................ 16

*United States v. Diggs*,
228 F. Supp. 3d 1113 (D. Nev. 2017) ........................................................ 14

*United States v. Garcia*,
425 F. Supp. 3d 1246 (D. Mont. 2019)........................................................ 17

*United States v. Gonzalez*,
336 F. App'x 701 (9th Cir. 2009) ........................................................ 17

*United States v. Houk*,
357 F. App'x 16 (9th Cir. 2009) ........................................................ 17

*United States v. Jorgensen*,
871 F.2d 725 (8th Cir. 1989) ........................................................ 6

*United States v. Kapahu*,
729 F. App'x 600 (9th Cir. 2018) .......... 15

*United States v. Kim*,
25 F.3d 1426 (9th Cir. 1994) .......... 14

*United States v. Kim*,
292 F.3d 969 (9th Cir. 2002) .......... 14

*United States v. Langford*,
2023 WL 195541 (9th Cir. Jan. 17, 2023) .......... 17

*United States v. Lee*,
699 F.2d 466 (9th Cir. 1982) .......... 15

*United States v. Lugo*,
2019 WL 6133667 (D. Mont. Nov. 19, 2019), *aff'd*
851 F. App'x 106 (9th Cir. 2021) .......... 15

*United States v. Manning*,
312 F. App'x 34 (9th Cir. 2009) .......... 15, 16

*United States v. Manzo*,
2023 WL 2155934 (9th Cir. Feb. 22, 2023) .......... 18

*United States v. Matlock*,
415 U.S. 164 (1974) .......... 5

*United States v. Nault*,
41 F.4th 1073 (9th Cir. 2022), *cert. denied*
143 S. Ct. 617 (2023) .......... 7

*United States v. Parker*,
919 F. Supp. 2d 1072 (E.D. Cal. 2013) .......... 6

*United States v. Ricardo D.*,
912 F.2d 337 (9th Cir. 1990) .......... 18

*United States v. Sciolino*,
2009 WL 2914570 n.3 (E.D. Cal. Sept. 9, 2009) .......... 6

*United States v. Scott*,
705 F.3d 410 (9th Cir. 2012) .......... 5

*United States v. Smith*,
783 F.2d 648 (6th Cir. 1986) ........................................ 6

*United States v. Taylor*,
60 F.4th 1233 (9th Cir. 2023) ........................................ 7, 8

*United States v. Vasey*,
834 F.2d 782 (9th Cir. 1987) ........................................ 5

*United States v. Ward*,
989 F.2d 1015 (9th Cir. 1992) ........................................ 13

*United States v. Weber*,
923 F.2d 1338 (9th Cir. 1990) ........................................ 12

*United States v. Willis*,
431 F.3d 709 (9th Cir. 2005) ........................................ 6

*United States v. Woods*,
720 F.2d 1022 (9th Cir. 1983) ........................................ 18

*Whren v. United States*,
517 U.S. 806 (1996)........................................ 11

*Wyoming v. Houghton*,
526 U.S. 295 (1999)........................................ 11

PHILLIP A. TALBERT
United States Attorney
SEAN O. ANDERSON
NATIONAL PARK SERVICE
LEGAL OFFICE
P.O. Box 517
Yosemite, California 95389
Telephone: (209) 213-8743
CHAN HEE CHU
Assistant United States Attorney
MISDEMEANOR UNIT
2500 Tulare Street, Suite 4401
Fresno, California 93721
Telephone: (559) 497-4000

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VALERIE L. TOLMOSOFF,<br><br>Defendant. | Case No. 6:23-po-00187-HBK<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**<br><br>Date: January 10, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Helena M. Barch-Kuchta |

The United States submits this opposition ("Opposition") to Defendant Valerie L. Tolmosoff's motion to suppress evidence ("Motion") [ECF #11]. For the reasons set forth herein, the Motion should be denied.

/ / /

/ / /

/ / /

/ / /

/ / /

## I. BACKGROUND

On January 16, 2023, United States Park Ranger Justin Fey, in the early afternoon, observed a black Cadillac parked on the road on Northside Drive near Valley View in Yosemite National Park.[1] Report of Justin Fey, Ex. 1. The Cadillac was parked in the left lane of the two-lane road, "partially obstructing the left lane of travel with the right side of the vehicle." *Id.* Given this improper parking, Ranger Fey exited his patrol vehicle, a few car lengths away from the Cadillac, to contact the occupants. "Immediately after exiting [the] patrol vehicle," Ranger Fey "smell[ed] the distinct odor of burnt marijuana in the air." *Id.*

As he walked over, Ranger Fey immediately observed one woman, dressed in a gray hoodie, later identified as Monique D. Hernandez ("Ms. Hernandez"), about a car length away to the left of the Cadillac, looking towards the trees on the left side of the road. Bodycam of Justin Fey, Ex. 2 at 00:34. During his approach, Ranger Fey asked, "How is it going? Is anybody else inside the car? Would you mind keeping your hands out of your pocket?" *Id.* at 00:36–00:46. After Ms. Hernandez answered, "No" to the other occupants question, and "Ok" to keeping the hands out of her pocket, Ranger Fey explained the reason for the stop. Ranger Fey stated, "The reason why I'm contacting you again is you're still parked in the road. You're sticking out into that lane," after again having to ask Ms. Hernandez to keep her hands out of her pocket. *Id.* at 00:46–00:50.

During the explanation, another woman, later identified as Valerie Tolmosoff ("Ms. Tolmosoff" of "Defendant") appeared, walking up the hill to the left of the Cadillac, leading Ranger Fey to ask, "Whose vehicle is it?" *Id.* at 00:50–00:51. Ms. Tolmosoff answered, "Mine," as she continued to climb up the hill. *Id.* at 00:51–00:52. Ranger Fey then asked, "Without going in it, any guns or knives in the vehicle today?" *Id.* at 00:53–00:55. Both women answered, "No," with Ms. Tolmosoff adding that she had parked the vehicle at the location because she wanted to see the water. *Id.* at 00:56–1:00. Ranger Fey then asked, "Any guns or knives on either of you?" *Id.* at 1:00–1:03. Both women again answered,

[1] Defendant's "Factual Background" section, devoid of any citation, largely ignores the facts in lieu of defense counsel's personal opinions and speculations. To rebut Ranger Fey's report of the smell of marijuana, for example, defense counsel without any evidentiary support (e.g., from an expert or even statements of Defendant), accused Ranger Fey of "a bold-faced lie" merely because of defense counsel's erroneous personal belief that it would have been impossible to smell marijuana under the circumstances. *See* [ECF #11 at 3].

"No." *Id.* at 1:03–1:04. Ranger Fey then explained, "The reason I'm going to be continuing talking to you is I can smell the odor of marijuana coming from the vehicle or coming from you," gesturing to both women, while again asking Ms. Hernandez to keep her hands out of her pockets. *Id.* at 1:04–1:10. In response to Ranger Fey, Ms. Tolmosoff acknowledged knowing that marijuana was illegal on federal property such as National Parks. *Id.* at 1:23–1:30. Ranger Fey then asked, "Without going back in the car, how much marijuana is in the car?" *Id.* at 1:30–1:33. Ms. Hernandez then admitted, "No, I just had a little piece, a little, and I already put it out . . . I just smoked a little bit." *Id.* at 1:33–1:39. Ranger Fey then asked, "Again, how much is in the car?" *Id.* at 1:39–1:40. Ms. Hernandez responded that there was nothing in the car and also stated that she did not have any marijuana on her person. *Id.* at 1:40–1:44. During this interaction, Ms. Tolmosoff also spontaneously turned to ask Ms. Hernandez, "You were just smoking right now while I was down there?" *Id.* at 1:38–1:40. Ms. Hernadnez turned to Ms. Tolmosoff and answered, "Yes, I just smoked." *Id.* at 1:39–1:40. Ranger Fey noted that this was not his "first time," and it seemed "real convenient" that people had used all they had as soon as he showed up, while further asking Ms. Hernandez to keep her hands out of her pockets. *Id.* at 1:45–1:57. Given this behavior, Ranger Fey performed a pat-down, and a search of Ms. Hernandez's pocket, after she provided consent. *Id.* at 2:08–3:07.

After the pat-down, Ranger Fey informed the women he would still be searching the vehicle "because it smells like it's coming from the vehicle as well." *Id.* at 3:34–3:38. The two women then began to panic, with Ms. Tolmosoff berating the other woman to give up the weed, even suggesting the specific location ("blue . . . bag") where the weed was stored. *Id.* at 3:38–3:39, 3:50–4:10. Although the women offered to give up the weed, Ranger Fey explained he would still be searching the vehicle, noting the practice of individuals giving officers their "giveaway weed" to prevent discovery of more substantial amounts or other paraphernalia. *Id.* at 4:46–5:24.

Ranger Fey then asked the women to stay put while returning to his patrol car to run Ms. Tolmosoff's vehicle registration information and call for backup to help search the vehicle. *Id.* at 5:24–7:33. After about two minutes, Ranger Fey returned to the women and explained that a vehicle search would allow the rangers to search anywhere in the vehicle where the weed might be stored—asking the woman to be upfront given the upcoming search. *Id.* at 7:33, 8:12–9:40. Shortly thereafter, United

States Park Ranger Sean Fitzgerald arrived to assist. *Id.* at 11:50–12:00. After a consented to pat-down was performed on Ms. Tolmosoff, Ranger Fitzgerald led the two women down the street away from the Cadillac so a vehicle search could be performed. *Id.* at 12:10–14:00. Prior to walking over, however, Ms. Hernandez again indicated that Ranger Fey should only search the "blue bag," leading the ranger to state, "I'm getting the feeling that there is something else in the car we're not talking about that I'm going to find in the car." *Id.* at 12:56–13:31.

The search lasted about twenty-three minutes, leading to the discovery of a tin of pre-rolled marijuana cigarettes in a blue bag, couple of knives, and a loaded "ghost" handgun inside a red clothing bag. *Id.* at 14:03–36:40, 51:48–51:50; Ex. 1 at 2. As Ms. Tolmosoff explained to Ranger Fitzgerald, the Cadillac contained about three days-worth of items, while noting "it's going to take a long time huh." Bodycam of Sean Fitzgerald, Ex. 3 at 2:37–3:00. During the search, the two women stood unstrained about 10 car lengths away from the Cadillac while being overseen by Ranger Fitzgerald. At times, Ranger Fitzgerald left the two women unattended, including to retrieve jackets from the Cadillac. *Id.* at 7:15–7:30, 11:00–11:20. Given the public location, other parkgoers can be seen on bodycam driving by the scene. Ex. 2 at 7:50–7:52, 13:22–13:24, 37:52–37:54 (appears like maintenance truck), 50:41–50:44.

While the search was ongoing, the women and Ranger Fitzgerald engaged in informal discussions here and there. *See, e.g.*, Ex. 3 at 11:55–13:20. Much of the discussion was unrelated to the ongoing investigation, with the women at times also spontaneously volunteering information. At one point, Ranger Fitzgerald informed Ms. Hernandez that she would not be going to jail if there was only marijuana. *Id.* at 8:00–8:10. At a later point, Ranger Fitzgerald noted again that warnings were the norm for a little bit of marijuana and that if it was something else, "a ticket" would be issued. *Id.* at 16:45–17:20. Ranger Fitzgerald also discussed driving conditions and the Cadillac's wheels as, "Just thinking ahead, [Ms. Tolmosoff] was going to have to take 41 or 120." *Id.* at 14:15–15:30. After discovery of the pistol, Ranger Fitzgerald asked whose firearm it was to which Ms. Tolmosoff admitted ownership, lack of a concealed carry permit, and lack of registration. *Id.* at 17:35–17:47, 18:28–18:31. Ms. Tolmosoff then volunteered various statements, all indicating her guilt (e.g., "My fault;" "My mom's a lawyer, she's going to say you're . . . dumb."). *Id.* at 17:53–18:11, 18:45–18:57. When Ms.

Tolmosoff expressed concerns with going to jail, Ranger Fitzgerald explained to her that was only one option, later confirming a ticket was an option. *Id.* at 20:00–20:30.

At the conclusion of the search, Ranger Fey asked Ms. Tolmosoff to come towards his patrol car. Ranger Fey then asked a few questions about the firearm and whether Ms. Tolmosoff had reviewed California law on proper gun storage. Ex. 2 at 36:50–38:07. After the one minute back and forth, Ranger Fey explained that Ms. Tolmosoff would only be receiving a ticket. *Id.* at 38:07–38:30. Ranger Fey did note that jail might have been appropriate in different circumstances (including weather). *Id.* at 38:47–39:00. After this three-minute interaction, Ranger Fey opened up the patrol car to start writing the firearm citation. *Id.* at 40:00.

The writing of the ticket and explanation thereof took about eight minutes. *Id.* at 40:00–48:00. During the explanation, Ranger Fey also asked that given how strong the odor of marijuana was in the air, such that one could smell the contraband by his patrol car, Ms. Tolmosoff to not "berate [Ms. Hernandez] too bad when we all knew it was in there," and asked for her thoughts on that. Ms. Tolmosoff stated, "I agree," in response. *Id.* at 46:54–47:13. After the ticket had already been handed over, Ranger Fey and Ms. Tolmosoff began to talk about the situation relating to the firearm again, with the ranger beginning the conversation by noting that she did not "have to answer and of these questions if you don't want to." *Id.* at 48:30–50:00. A few minutes later, Ranger Fey walked over to Ms. Hernandez to warn her about the marijuana and noting that they were free to go on their way after he secured the knives in the trunk. *Id.* at 51:15–52:05.

From beginning the end, the interaction between the rangers and Ms. Tolmosoff lasted around 53 minutes. Ms. Tolmosoff was not given *Miranda* warnings at any time.

## II. LEGAL STANDARD

### A. Fourth Amendment

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and requires warrants to be "supported by Oath or affirmation, and particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Although the text of the Fourth Amendment does not specify *when* a search warrant must be obtained," the Supreme Court "has inferred that a warrant must

generally be secured." *Kentucky v. King*, 563 U.S. 452, 459 (2011) (emphasis added). But the Court has also "recognized that this presumption may be overcome in some circumstances because the ultimate touchstone of the Fourth Amendment is reasonableness." *Id.* (internal quotations and citations omitted). "Accordingly, the warrant requirement is subject to certain reasonable exceptions." *Id.* (citation omitted).

In practice, on a motion to suppress, the proponent typically has "the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citations omitted). "To do so, he must establish either that he personally had a property interest protected by the Fourth Amendment that was interfered with, or a reasonable expectation of privacy that was invaded by the search." *United States v. Bowie*, 726 F. App'x 625, 626 (9th Cir. 2018) (citations and internal quotation marks omitted). If the proponent, however, makes such a showing and the search also occurred without a warrant, the burden shifts to the United States to show, by a preponderance of evidence, that an exception applies. *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012); *United States v. Vasey*, 834 F.2d 782, 785 (9th Cir. 1987); *see also United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." (citation omitted)).

**B. <u>Fifth Amendment</u>**

Absent certain exceptions, law enforcement officers must advise suspects of their *Miranda* rights where they are both in "custody" and subject to "interrogation."

In practice, on a motion to suppress, the proponent has the burden of establishing both "custody" and "interrogation" by a preponderance of evidence.[2] *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." (citation omitted)). Although the Ninth Circuit has not expressly decided this issue,[3] placing this burden on the proponent is consistent with the general

---

[2] The proponent also has the burden of establishing interrogation.

[3] "In the original opinion filed by the Ninth Circuit in *United States v. Bassignani*, [560 F.3d 989, 993 (9th Cir. 2009)], the court addressed the specific issue regarding the burden of proof in demonstrating whether a defendant is in custody for purposes of *Miranda*." *United States v. Sciolino*, No. 2:09-CR-0070, 2009 WL 2914570, at *3 n.3 (E.D. Cal. Sept. 9, 2009). "However, this portion of the opinion was deleted in the amended opinion." *Id.* (citation omitted).

rule that the burden of persuasion (and production) falls on the party seeking suppression. *See United States v. Willis*, 431 F.3d 709, 715 n.5 (9th Cir. 2005) ("The defendant has the burden of proof on a motion to suppress evidence." (citation omitted)); *United States v. Smith*, 783 F.2d 648, 650 (6th Cir. 1986) ("The burden of production and persuasion rests on the person seeking to suppress evidence." (citing *United States v. Arboleda*, 633 F.2d 985, 989 (2d Cir. 1980))). Circuit courts to have decided this issue appear to uniformly impose the burden on the proponent. *See United States v. Sciolino*, No. 2:09-CR-0070, 2009 WL 2914570, at *3 (E.D. Cal. Sept. 9, 2009) ("The Fifth Circuit, Eighth Circuit, and numerous district courts have also explicitly held that a defendant bears the burden of proving he was in custody at the time incriminating statements were made." (collecting cases)); *United States v. Jorgensen*, 871 F.2d 725, 729 (8th Cir. 1989) (finding that defendant "failed to demonstrate that he was subjected to custodial interrogation").

## III. ARGUMENT

### A. The Search of Ms. Tolmosoff's Vehicle Falls within the Automobile Exception

The "odor" of marijuana emanating in the air, including around the Cadillac, and also from within the vehicle, provided probable cause for the search of the vehicle without a warrant. *See United States v. Parker*, 919 F. Supp. 2d 1072, 1079 (E.D. Cal. 2013) ("The odor of marijuana emanating from a vehicle creates sufficient probable cause to justify a warrantless search of the vehicle."); *see also California v. Acevedo*, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."). Defendant's and Ms. Hernandez's statements, including those volunteered without any prompting by Ranger Fey (e.g., Defendant telling Ms. Hernandez to give up the weed), also provided probable cause to search the vehicle.

There was also no unconstitutional prolongation of a valid stop prior to the development of probable cause to search the Cadillac for drugs.[4] Defendant's arguments to the contrary, as explained

[4] Defendant does not appear to challenge the initial stop. But Defendant confusingly makes the following irrelevant claims regarding the initial stop: (1) snow had made travel in the left lane almost impassable; (2) all drivers were using the right lane; and (3) the vehicle was more than six feet away from the right lane, the lane being used by other drivers. None of these facts refute the point that Defendant's vehicle was parked, at least partially, in the middle of the road. A "no harm, no foul" defense does not exist in criminal law. *See* [ECF #11 at 7].

below, are meritless, and based on misunderstanding of binding precedent, irrelevant facts, and the personal opinions of defense counsel.

### 1. Ninth Circuit Binding Caselaw Allows Officers to Ask about Weapons During a Traffic Stop

After making a traffic stop based on reasonable suspicion, "an officer may 'address the traffic violation that warranted the stop,' make 'ordinary inquiries incident to the traffic stop,'[5] and 'attend to related safety concerns.'" *United States v. Taylor*, 60 F.4th 1233, 1239 (9th Cir. 2023). "[B]asic questions, such as whether [the driver] knew why he had been pulled over, whether he had identification, whether he had been arrested before, and whether he had any weapons in the vehicle," are "'ordinary inquiries' incident to a traffic stop made as part of 'ensuring that vehicles on the road are operated safely and responsibly,' or else are 'negligibly burdensome precautions' that an officer may take 'in order to complete his mission safely.'" *Id.* (citations omitted). "The stop may last 'no longer than is necessary to effectuate' these purposes and complete the traffic 'mission' safely." *Id.* (citations omitted); *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not *measurably* extend the duration of the stop." (emphasis added)). A stop, however, "may be extended to conduct an investigation into matters other than the original traffic violation" so long as "the officers have reasonable suspicion of an independent offense." *Taylor*, 60 F.4th at 1239 (citation omitted).

Ranger Fey's weapons-related questions were permissible ordinary inquiries incident to traffic stops, as the Ninth Circuit recently held via published opinion in *United States v. Taylor*. *See id.* ("Once [defendant] was stopped on the side of the street, [the officer] was permitted to ask . . . whether he had any weapons in the vehicle."). Defendant, however, failed to address *Taylor* at all, choosing instead to

---

[5] For purposes of this motion, the United States accepts Defendant's contention that a traffic stop occurred as opposed to a *Terry* stop---despite the fact that the vehicle was already parked. *See also United States v. Nault*, 41 F.4th 1073, 1080 (9th Cir. 2022) ("Whether described as a traffic stop or an investigative vehicle stop, the analysis here is the same. Traffic stops are analyzed under the same *Terry* principles that apply to investigative stops." (internal quotation marks omitted)), *cert. denied*, 143 S. Ct. 617 (2023).

cite to an unpublished opinion for support.[6] Under binding circuit authority, Ranger Fey plainly was authorized to ask about weapons during the traffic stop—without that time being considered an impermissible prolongation of the stop.

**2. The Odor of Marijuana provided independent basis to prolong the Traffic Stop and Conduct a Vehicle Search**

The odor of burnt marijuana also provided an independent basis to prolong the traffic stop. Ranger Fey understandably noticed the odor of marijuana in the air after stepping out of his patrol car. Ms. Hernandez undisputedly had smoked shortly before being approached by Ranger Fey. Having smelled the odor of marijuana on the women and/or coming from the vehicle, Ranger Fey, had probable cause—not merely reasonable suspicion—to continue questioning and ultimately search the vehicle. *See United States v. Chelgren*, No. CR-S-10-182 KJM, 2010 WL 3210839, at *4 (E.D. Cal. Aug. 10, 2010) (holding "smell [of burnt marijuana] alone established probable cause to search the interior of the car" (collecting cases)).

Defendant, without any legal support, first makes the absurd claim that "[i]t was not reasonable for Ranger Fey to ask [Ms. Tolmosoff] if she had any drugs in the car because he did not witness her smoking cannabis and she informed him that she did not been smoking anything." [ECF #11 at 7]. This argument is plainly irrelevant given that Ranger Fey had smelled marijuana in the air around the women and the vehicle. Defendant's argument also posits a legal theory where officers are required to blindly believe all statements by suspects. Moreover, even if Ms. Tolmosoff had not been smoking, and the odor of marijuana was only emanating from Ms. Hernandez, that would provide reasonable suspicion to ask both individuals about drugs and drug possession given their shared occupancy in the vehicle. *See United States v. Savath*, 398 F. App'x 237, 239 (9th Cir. 2010) (Probable cause for vehicle search provided by passenger's statement). Given the odor of marijuana in the air and/or from the vehicle, Ranger Fey could plainly ask the two occupants of the vehicle, including Defendant about marijuana, including whether there was any of the contraband in the vehicle.

Defendant's second argument that the vehicle search was impermissible because of defense

[6] Having copied the Federal Defender's motions in unrelated cases in their entirety, defense counsel appears not to have conducted any independent research, leading to the same litany of legal errors—including the failure to identify *United States v. Taylor*, as binding precedent on this issue.

counsel's personal opinion that the smell of marijuana could not have been noticed by Ranger Fey is both irrelevant and unsupported by the evidence. [ECF #11 at 7]. As an initial matter, given the smell of marijuana of in the air, Ms. Hernandez's admissions of being both an occupant of the Cadillac and of having smoked marijuana, there existed probable cause to search the vehicle even if there was no smell emanating from the vehicle. Given that Ms. Hernandez had been in the vehicle and had smoked marijuana in the park, in that location, there plainly had to have been marijuana being transported in the vehicle. And beyond the women's own self-serving statements, there was no reason to believe that there would not be more contraband inside the vehicle, particularly given that there was none on Ms. Hernandez's person—any unused portion of the marijuana or unsmoked marijuana would necessarily have to have been in the Cadillac. And as noted, there is no evidence to disbelieve Ranger Fey's statement that there was odor of marijuana emanating from the vehicle. Defendant provides no witness, scientific or otherwise reliable evidence to suggest that smell of marijuana cannot emanate outside a vehicle (or that only dogs can perceive the odor in such circumstances) simply because the windows and trunk were closed, and the marijuana was stored away in a plastic box in luggage.[7] *Cf. United States v. Laird*, 511 F.2d 1039, 1040 (9th Cir. 1975) (affirming denial of motion to suppress where officers smelled "the odor of marijuana emanating from the trunk" of the vehicle). Moreover, Ms. Hernandez would have to either have had marijuana on her person while in the Cadillac or take it out of storage from the trunk of the vehicle in order to smoke the marijuana at that location—undermining defense counsel's pet theory. Notably, the vehicle search also only occurred after the women admitted that there was marijuana in the vehicle.

Defendant's argument that marijuana also cannot give rise to probable cause because of President Biden's October 2022 proclamation is sorely misguided. As even Defendant admits,

---

[7] And probable cause would exist even if Ranger Fey made "a reasonable mistake of fact or law." *Olsen v. City of Henderson*, 648 F. App'x 628, 631 (9th Cir. 2016); *Peters v. City of Huron*, No. 1:08-CV-321, 2009 WL 4048684, at *6 (E.D. Cal. Nov. 20, 2009) (same), *aff'd sub nom. Peters v. Richwine*, 462 F. App'x 689 (9th Cir. 2011). Given the strong odor of marijuana in the air, as even Defendant acknowledged, perceiving the smell as coming from the car as opposed to an individual would be a reasonable mistake of fact.

marijuana possession ***remains a federal crime*** and may be enforced even after the President's Proclamation. The language of the Proclamation is also careful to note that pardons are available only to those who committed the offense of "simple possession of marijuana"—not that all marijuana related offenses are to be pardoned, let alone decriminalized—a result that also can only be achieved by an Act of Congress or agency notice and comment rulemaking. *See Proclamation* No. 10467, 87 Fed. Reg. 61,441 (Oct. 6, 2022). Moreover, the Proclamation is merely the exercise of prosecutorial discretion. *See In re Aiken Cnty*., 725 F.3d 255, 262 (D.C. Cir. 2013) ("The Presidential power of prosecutorial discretion is rooted in Article II, including the Executive Power Clause, the Take Care Clause, the Oath of Office Clause, and the Pardon Clause."). And by definition, discretion affords prosecutors the freedom to pursue a case or not depending on the circumstances.[8] That prosecutors choose to pursue certain crimes more than others due to various considerations (e.g., resources and policy considerations), does not mean the lesser pursued crimes no longer constitute illicit activities (e.g., immigration officials pursuing more often those with criminal records over other illegal immigrants). Given that marijuana possession remains a federal offense, rangers had probable cause once they detected its odor to pursue an investigation—it is for prosecutors (and the executive) to decide whether to pursue the crime—not the Defendant. Defendant's argument that due consideration should be given to California's interests also similarly violates basic principles of federalism and the Supremacy clause. The Federal Government decides what constitutes federal crimes on federal lands—not the States.

Defendant's argument specific to the *Carroll* Doctrine is similarly nonsensical. Defendant relies on a series of imagined subjective views of the officers and the prosecution involved: (1) that rangers would not have "actually sought a [search] warrant" for "a little bit of marijuana"[9] at a home; (2) that rangers did not issue a citation for possession of marijuana; and (3) that the "government likely would not have enforced it anyway." [ECF #11 at 10–11]. But "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). As a result, it neither matters what Ranger Fey would have done if marijuana was in a home nor

[8] Even under the current policy, federal prosecutors may pursue simple possession charges in certain cases.

[9] Throughout his motion, Defendant oddly claims that the rangers and this Court must accept the contention of those being investigated without any investigation.

that she did not issue a citation for possession of marijuana. What matters instead is that Ranger Fey would need a search warrant to the extent she was seeking to investigate the presence of marijuana in a home. And again, United States prosecutors decide what crimes to pursue—not Defendant. Defendant cannot simply wish away the fact that marijuana possession remains a federal offense.[10]

### 3. <u>Defendant's "Excessive Search" Argument is Meritless</u>

Defendant's "excessive automobile search" argument fails as a matter of law. As an initial matter, Defendant inaccurately claims that Ranger Fey had probable cause only to search for "two joints" or "a small amount of marijuana." [ECF #11 at 8]. Defendant relies on Ms. Hernandez's self-serving statements that there was only a bit of marijuana. But Ranger Fey developed probable cause first based on the odor of marijuana, which does not inherently limit the amount of the drug that may be within the vehicle. An odor from the Cadillac, unless limited in some way, would also suggest that the drugs may be hidden throughout the vehicle. *See also Wyoming v. Houghton*, 526 U.S. 295, 301-02 (1999) (noting that where probable cause exists to justify search of a lawfully stopped vehicle, the probable cause justifies a search of every part of the vehicle that may conceal the object of the search, making no distinction among packages or containers based on ownership.). And Defendant cannot reduce the scope of the probable cause developed simply by making self-serving statements. Ranger Fey was free to believe the admission of drug possession but not the asserted amount. Defendant unsurprisingly fails to provide any support that an officer must blindly accept the statements of suspects and limit their searches accordingly. *Cf. Gill v. City of Murrieta*, No. 5:09-CV-01309, 2011 WL 333071, at *2 (C.D. Cal. Jan. 26, 2011) ("The officer . . . has no obligation to give credence to a suspect's self-serving statements, and he has no obligation to investigate fully before making a probable cause determination."). Indeed, Defendant and Ms. Hernandez had both proven to be dishonest, already having been caught lying about having marijuana in the vehicle in the first place. And as Ranger Fey later conveyed and Defendant agreed, the smell of marijuana was so strong at this point that it was absurd for Defendant to even pretend she did not know of its existence and use. Moreover, Ranger Fey

---

[10] In the Ninth Circuit, there remains an open question whether *state* officers have probable cause for marijuana based on federal violations.

explained the concept of "giveaway" weed and explained that Defendant's[11] and Ms. Hernandez's suspicious actions of trying to limit the search to the blue bag made him believe that there was more contraband in other locations in the vehicle.

Neither of the cases Defendant cites advances his argument. Defendant relies first on *United States v. Weber*, for the proposition "that probable cause to believe that some incriminating evidence will be present at a particular place does not necessarily mean there is probable cause to believe that there will be more of the same." 923 F.2d 1338, 1344 (9th Cir. 1990). But *Weber* was a child pornography case where the underlying warrant authorized the seizure of a wide variety of materials despite there only being evidence of four sets of pictures sent by law enforcement. Aside from these bait materials, the officers relied primarily on a parcel of advertising material of "apparently" child pornography seized by customs almost two years earlier that was addressed to a name similar to but different from the target's name. Customs had also failed to determine whether the parcel was ordered or unsolicited; the target acknowledged receipt of the notice of seizure but did not attempt to claim the parcel. Although expert opinion was also submitted about classes of individuals likely to have child pornography at the home, the submission failed to demonstrate that the target fit within those categories.

Finding the warrant overbroad, the Ninth Circuit thus reasoned that this slim evidence required an unreasonable number or "chain of inferences" to conclude that additional evidence of child pornography would be found. Likewise, *United States v. Nora*, was a case where officers had only observed one discrete firearm but sought to seize additional firearms despite lacking any evidentiary support. 765 F.3d 1049, 1060 (9th Cir. 2014).

In contrast to *Weber* and *Nora*, the odor of marijuana neither requires additional evidence nor an unreasonable number of inferences to support the conclusion that there may be marijuana throughout a vehicle (whatever the amount). An odor of marijuana, unless limited to a specific area of a vehicle, suggests that contraband may be stored in all parts of the vehicle. A strong smell such as in this case is also consistent with a large quantity of marijuana rather than "a small amount." Unsurprising, "[t]he

---

[11] Ranger Fey also seemed to think it odd that Defendant wanted to car her grandmother for what should have been a very short stop if the search yielded only marijuana. Based on the bodycam footage, Ranger Fey seemed to believe (accurately) that Defendant was concerned that the firearm was going to be found and having to go to jail that day, and wanted to convey that fact to the grandmother.

Ninth Circuit and district courts within this circuit have [thus] repeatedly found that the odor of marijuana alone justifies a search of [the entirety of] a vehicle for additional contraband." *United States v. Collins*, No. 16-CR-00244-SI-1, 2018 WL 306696, at *3 (N.D. Cal. Jan. 5, 2018) (collecting cases), *aff'd*, 827 F. App'x 721 (9th Cir. 2020).

### B. Defendant Failed to Meet His Burden of Demonstrating Custodial Interrogation

#### 1. Defendant Does Not Even Attempt to Demonstrate Interrogation

Despite bearing the burden to demonstrate both "custody" and "interrogation," Defendant has fully abdicated his responsibility. As to "interrogation," Defendant's motion merely states that "this Court must enter an order that all statements of Miss Tolmosoff and her passenger, in response to any of the ranger's **questions** while they were in their custody are excluded from trial." [ECF #11 at 13 (emphasis added)]. But "not all questions constitute interrogation." *Martinez v. Cate*, 903 F.3d 982, 993 (9th Cir. 2018). Defendant's blanket request should be denied (even if the Court finds custody). Defendant should not be allowed to shift the burden to the Court and the United States of determining if and when interrogation took place.

Additionally, Defendant's request improperly asserts Ms. Hernandez's Fifth Amendment rights. The Constitution protects *individual* rights and typically cannot be asserted vicariously as Defendant desires. *See United States v. Ward*, 989 F.2d 1015, 1020 (9th Cir. 1992) (holding defendant "ha[d] no standing to assert the . . . Fifth Amendment rights of others."). Any argument as to Ms. Hernandez's statements should be denied.

#### 2. Defendant was not in Custody

A defendant is in custody if "there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Bassignani*, 575 F.3d 879, 883 (9th Cir. 2009) (citation omitted). To determine whether custody exists, a court thus "examine[s] the totality of the circumstances surrounding the interrogation," and asks if a "reasonable innocent person in such circumstances would conclude that *after brief questioning* he or she would not be free to leave." *Id.* (citations omitted and emphasis added). This "determination is objective and is not based upon 'the subjective views of the officers or the individual being questioned.'" *Id.* (citation omitted).

In practice, courts in the Ninth Circuit rely primarily on five, non-exhaustive, factors to determine whether custody exists: (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. *Id.* at 883–84 (citation omitted); *see also United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002) ("Other factors may also be pertinent to, and even dispositive of, the ultimate determination."). Although these factors are used to analyze all types of scenarios, it should be noted that "traffic stops are typically considered non-custodial for purposes of *Miranda.*" *United States v. Anthony*, 330 F. App'x 661, 662–63 (9th Cir. 2009).

Defendant erroneously argues that he was in custody for purposes of Miranda "when she was advised by Ranger Fey that he was going to search the vehicle — then at the latest when he instructed Miss Tolmosoff to walk about 40 feet in front of her with the other Ranger." [ECF #11 at 13]. The totality of the circumstances demonstrates that Defendant was not in custody at that time.[12]

As an initial matter, Defendant was not summoned for questioning, but instead approached while outside nearby her voluntarily parked vehicle.[13] *See United States v. Anthony*, 330 F. App'x 661, 662 (9th Cir. 2009) ("[T]he stop here never crossed the line into custody because . . . [defendant] was not summoned for questioning in an accusatory manner . . . ."); *United States v. Diggs*, 228 F. Supp. 3d 1113, 1117–18 (D. Nev. 2017) (finding defendant not summoned for questioning where "told . . . to exit the car so that the car could be searched"); *see also United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994) ("[W]here, as here, officers come upon an already parked car, this disparity between automobile and pedestrian stops dissipates and the driver is not clearly stopped in any sense *ab initio,* except of his own volition."). This factor thus weighs against a finding of custody. *See also United States v. Brooks*, 772 F. App'x 573, 574 (9th Cir. 2019) (finding even "loud and aggressive" language used to summon defendant reasonable under the circumstances).

[12] The United States responded to Defendant's argument as to custody given Defendant's burden. The factors, however, demonstrate that there was never custody.

[13] Even if we consider the later request by Ranger Fey to come towards his patrol car a summons for questioning, the request was made in a professional tone and thus weighs against a finding of custody.

Second, Defendant was not confronted with evidence of guilt at any point designated by prior to being asked to walk a short distance away so that a search could be conducted (the point Defendant argues was when he was in custody). Ranger Fey had at this point only asked about weapons generally as part of the ordinary inquiries incident to the stop. *See Bassignani*, 575 F.3d at 884 (no custody "when the officers did not attempt to challenge [the defendant's] statements with other known facts suggesting his guilt, [but] merely asked [him] about the allegations" (citation and internal quotation marks omitted)). And even when the evidence of the firearm was finally raised, Ranger Fey maintained a calm demeanor, and used the opportunity to inform Defendant about the law and best practices moving forward. Ranger Fey, for example, explained that the firearm could not be transported while loaded, while also noting the potential dangers of purchasing firearms without serial numbers. *See, e.g.*, Ex. 3 at 22:15-23:30. Much of the discussion regarding the firearms also took place only after Defendant was informed she was only going to given a ticket and also after she was told she did not have to answer questions. *See United States v. Castillo*, 312 F. App'x 891, 892 (9th Cir. 2009) (no custody where "detective did not confront [defendant] with evidence of guilty of a drug charge until a search of car revealed the drugs"). This factor thus weighs against a finding of custody. *See United States v. Manning*, 312 F. App'x 34, 35 (9th Cir. 2009) ("[T]his is not the case where the agents repeatedly called her a liar, confronted her with misleading evidence, and pressed her for the truth."); *cf. United States v. Lee*, 699 F.2d 466, 468 (9th Cir. 1982) ("The agents allowed him to repeat his exculpatory story, then for 15 minutes confronted him with evidence of his guilt, and told him it was time to tell the truth.").

Third, any interrogation, to the extent any occurred, took place on a busy public park road, as evidenced by the many parkgoers who drove by throughout the traffic stop. This factor thus weighs against a finding of custody. *See United States v. Kapahu*, 729 F. App'x 600, 601 (9th Cir. 2018) (no custody where defendant was "questioned for only a few minutes in a public part of the airport"); *see also United States v. Lugo*, No. CR 19-17-BU-DLC, 2019 WL 6133667, at *5 (D. Mont. Nov. 19, 2019) (third factor weighed against custody even where defendant placed in patrol car), *aff'd*, 851 F. App'x 106 (9th Cir. 2021).

Fourth, Defendant had only been stopped for 13 minutes when she was asked to walk down the street so a search could be conducted. And even if the entirety of the stop is considered (fifty-three

minutes), the length of the detention was reasonable under the circumstances. Given that the stop involved a search through "three days-worth" of camping gear, the detention "took no longer than was necessary." *See United States v. Cuesta*, No. 1:06-CR-40 AWI, 2007 WL 2729853, at *9 (E.D. Cal. Sept. 19, 2007) (finding no custody where defendant "was stopped, questioned, subjected to sobriety tests, had a wants-and-warrants check, the vehicle he drove was searched"), *aff'd*, 286 F. App'x 358 (9th Cir. 2008); *see also Bassignani*, 575 F.3d at 886 (no custody where interrogations lasted in one case "more than one hour"). This factor thus weighs against a finding of custody.

And finally, the rangers applied minimal, if any, pressure to detain Defendant. As an initial matter, Defendant "was not threatened, restrained, or subject to any physical or psychological pressure" *Manning*, 312 F. App'x at 35–36 (finding "almost no pressure" had been applied in such circumstances). Defendant, for example, was neither handcuffed nor told she was under arrest. *See United States v. Brobst*, 558 F.3d 982, 996 (9th Cir. 2009) (weighing factor against custody where defendant was neither handcuffed nor told that he was under arrest); *United States v. Castillo*, 312 F. App'x 891, 892 (9th Cir. 2009) (no custody where defendant "was not handcuffed, placed in [a] police car, or otherwise physically detained"); *see also United States v. Abbassi*, 801 F. App'x 484, 486 (9th Cir. 2020) (no custody "despite the officer's use of handcuffs"). The rangers also never employed aggressive or threatening language or tone throughout the stop, and also let Defendant know, in various ways, that she would be free to leave following the vehicle search should there only be a little bit of marijuana.[14] *Castillo*, 312 F. App'x at 892 (no custody where "detective did not use threatening language"); *United States v. Gonzalez*, 336 F. App'x 701, 703 (9th Cir. 2009) ("Being aware of the freedom to depart, and in fact departing after questioning at a law enforcement office, suggests that the questioning was noncustodial." (citation omitted)). And even after the firearm was discovered, Ranger Fey informed Defendant she would only be receiving a citation. This factor thus weighs against a finding of custody.

---

[14] Statements that a person is free to leave, although not required, strongly indicate the absence of custody. The absence or provision of such statements are analyzed under the fifth factor which considers "the degree of pressure used to detain the defendant." *See Bassignani*, 575 F.3d at 886. Although the rangers did not use the exact language, their actions and statements made clear that Defendant would be free to leave after brief questioning and a search of the vehicle.

Based on the above and all other relevant factors, Defendant was not in custody, regardless of which party bears the burden of persuasion. Although there are no set number of factors required, courts have little trouble finding no custody where multiple factors favor such a finding as here. *See Bassignani*, 575 F.3d at 887 (no custody based on three factors); *United States v. Houk*, 357 F. App'x 16, 17 (9th Cir. 2009) (no custody based on four factors). Under the totality of circumstances, Defendant's movement cannot be said to have been restrained "to the degree associated with a formal arrest," requiring *Miranda* warnings. *United States v. Langford*, No. 22-10041, 2023 WL 195541, at *2 (9th Cir. Jan. 17, 2023) ("An officer's obligation to give a suspect *Miranda* warnings before interrogation extends only to those instances where the individual is in custody." (citation and internal quotation marks omitted)).

### 3. <u>Defendant's Arguments to the Contrary are Unpersuasive</u>

Defendant's arguments to the contrary are unpersuasive. Rather than fully engaging with the five factors customarily employed by courts in the Ninth Circuit in analyzing custody, Defendant relies largely on irrelevant aspects of the traffic stop.[15] Specifically, Defendant argues that there was restraint akin to a formal arrest based on: (1) occupants of the vehicle being asked to stand in the cold; (2) consent frisks being performed on the occupants; (3) a vehicle search being performed; (4) the presence of two rangers; (5) that the stop lasted a little more than an hour; and (6) a citation was issued.

As an initial matter, Defendant's reliance on the occupants being asked to stand outside the vehicle, the consent frisks, vehicle search, the presence of two officers, and a citation being issued is plainly meritless. During traffic stops, officers are entitled to ask occupants to exit the vehicle. *See United States v. Garcia*, 425 F. Supp. 3d 1246, 1255 (D. Mont. 2019) ("Because traffic stops are especially fraught with danger to police officers, officer safety may outweigh *de minimis* intrusions, such as requiring a driver or passengers to exit the vehicle." (citations and internal quotation marks omitted)). As to the frisk performed on the occupants, Defendant fails to provide any support that such actions are inherently coercive when officers proceeded by *consent*. *See United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001) ("A *Terry* stop-and-frisk is not custody"); *United States v. Chong*, No.

[15] This is not to suggest any one factor is required or dispositive.

CR 15-00176-AB, 2015 WL 5156438, at *12 (C.D. Cal. Sept. 2, 2015) ("Nor does a frisk or pat-down search rise to the level of a formal arrest for the purposes of custody under *Miranda*." (citation omitted)), *aff'd in part*, 720 F. App'x 339 (9th Cir. 2017); *see also Berkemer v. McCarty*, 468 U.S. 420, 441–42 (1984) (no custody where officer had driver exit the vehicle and asked to perform field sobriety tests). The Ninth Circuit has also held numerous times that a search of a vehicle does not automatically transform a traffic stop into an arrest. *See United States v. Ricardo D.*, 912 F.2d 337, 341 (9th Cir. 1990) ("[W]e held that no arrest occurred when, after a routine vehicle stop, the officer . . . spoke to [defendant's] companion and conducted a search of [defendant's] vehicle."); *United States v. Manzo*, No. 21-50248, 2023 WL 2155934, at *1 (9th Cir. Feb. 22, 2023) (no custody where vehicle search occurred); *see also United States v. Woods*, 720 F.2d 1022, 1029 (9th Cir. 1983) (stating "brief questioning of [defendants] in the cocktail lounge was not custodial under *Miranda* simply because they were under investigation for a narcotics violation and were not free to leave"). That there were only two officers involved favors a finding against custody as that is an expected number of officers during a traffic stop. *See Berkemer*, 468 U.S. at 438 (noting that one to two officers are typical). Moreover, officers are allowed to position themselves (including overseeing suspects) to insure their safety. *See Brobst*, 558 F.3d at 996 ("Even if the officers did position themselves to prevent [defendant] from leaving, it was reasonable under these circumstances to take steps to insure their safety." (citations omitted)). And finally, an issuance of citation supports a finding of non-custody as it is inherently an *alternative* to arrest. *See Brooks*, 772 F. App'x at 574 ((no custody in case where citation issued).

The duration of the stop was reasonable (not unduly coercive) under the circumstances. As Defendant acknowledged, the Cadillac held three-days' worth of camping gear that needed to be searched through. Much of the interaction was also lengthened by Ms. Hernandez's suspicious actions, including putting hands in her pockets numerous times, and Defendant's outbursts towards Ms. Hernandez. There is again no evidence to suggest that the search and overall stop took any longer than necessary.

Under the totality of the circumstances, Defendant was not in custody and not entitled to *Miranda* warnings.

## IV. CONCLUSION

For the reasons set forth above, the Court should deny Defendant's motion to suppress.

DATED: December 17, 2023

Respectfully submitted,

PHILLIP A. TALBERT
United States Attorney

By: /s/ *Chan Hee Chu*
CHAN HEE CHU
Assistant United States Attorney
SEAN O. ANDERSON
Legal Officer

# *TOLMOSOFF, VALERIE*

# *6:23-PO-00187-HBK*

# *EXHIBITS 1 – 3*

# *PDF's and Videos*

UNITED STATES
DEPARTMENT OF THE INTERIOR
**National Park Service**
Arrest Report

| | |
|---|---|
| *Arrestee:* | **TOLMOSOFF, VALERIE L 06/17/1996 (27) F DL:CA:F4863112** |
| *Incident:* | NP23013188 Law Enforcement @01/16/2023 12:17 |

*Author:* #622 FEY, J. *Report time:* 05/03/2023 00:38
*Entered by:* #622 FEY, J. *Entered time:* 05/03/2023 00:38

***Arrest Details:***

*Arrest time:* 01/16/2023 12:30
*Place of Arrest:* NORTHSIDE DR, Yosemite, Mariposa CA USA 95389 (Northside Dr at Valley View) (Region: PWR, State/Zone: CA, Area: YOSE, Site: VALLEY, Place: VALLEY)
*Arresting Officer:* #622 FEY, J.
*Type:* *Warrant Number:*
*Release time:*
*Disposition:* Notice to appear
*Release officer:*
*Fingerprint date:*
*Court date:* *Court room:*

***Property Details:***

*Property bag number:*
*Property description:*
*Property taken by officer:*
*Cash taken:* $ *Cash taken by officer:*
*Remarks:*

| ***Off/Chg date:*** | ***Inc #:*** | ***Status:*** | ***Offence/Charge summary:*** |
|---|---|---|---|
| 01/16/2023 | NP23013188 | Fed Viol Notice | 36 CFR 2.4(c) Improper tranportation of weapons, traps and nets (Adult) |
| 01/16/2023 | NP23013188 | Warning/FI | 36 CFR 4.13(a) Stopping or parking vehicle on park road except when authorized or conditions are beyond operator's control (Adult) |

***Narrative:***

**Initial Observation**

While on patrol in a marked patrol vehicle on Northside Drive near Valley View, I observed a black Cadillac, displaying CA 8PFM142, obstructing traffic by parking partially obstructing the left lane of travel with the right side of the vehicle, in violation of 36 CFR 4.13 Obstructing Traffic; stopping or parking in a roadway. There were several inches of snow on the roadway and the pullout the vehicle was sticking out into the roadway at was around a blind corner. I could see the yellow shoulder line running underneath the parked vehicle between the left and right tires. The green 2022 sticker displayed on the rear plate of the vehicle was showing expired.

As I exited my patrol vehicle, I observed a woman standing at the rear of the vehicle and a second woman, later identified as Valerie L. TOLMOSOFF, down near the Merced River. Immediately after exiting my patrol vehicle, I could smell the distinct odor of burnt marijuana in the air.

**Initial Contact**

I approached the two woman and the parked vehicle. I asked twice if there were firearms or knives in the vehicle and they denied. Standing near the trunk of the vehicle I could smell the distinct odor of marijuana coming from the parked vehicle. When I advised I could smell marijuana the woman near the vehicle admitted to having a little bit of marijuana, she indicated in her hoody pocket, but it was gone. The woman denied having marijuana inside the vehicle.

I advised both woman I could smell the odor of marijuana coming from vehicle and I would be conducting a vehicle search. TOLMOSOFF verbally argued with the woman about bringing marijuana and TOLMOSOFF stated there was marijuana in blue bag in the trunk, which the other woman agreed. They offered to hand me the marijuana but I declined and advised I would be conducting a vehicle search.

I identified TOLMOSOFF, the registered owner of the vehicle, from a current and valid California driver's license.

I requested U.S. Park Ranger Sean Fitzgerald, who was nearby, to respond to my location.

U.S. Park Ranger Sean Fitzgerald arrived on scene.

**Vehicle Search**

I conducted a Carroll Doctrine search of the vehicle. In the trunk I located a tin of pre-rolled marijuana cigarettes in a blue bag which I seized as evidence. In the trunk I located and seized as evidence a loaded "ghost" gun in a green bag inside a red clothing bag. The magazine was loaded with 9mm ammunition, and the magazine was loaded into the magazine well. I broadcast via portable radio I located a firearm in the vehicle.

**Firearm**

TOLMOSOFF overheard the radio broadcast and admitted to Officer Fitzgerald the gun was hers and it was not registered. The seized firearm did not have a serial number and appeared to have been privately assembled outside of a firearms manufacturer using a "build body kit".

**Disposition**

I issued this mandatory appearance violation notice to TOLMOSOFF for 36 CFR 2.4(c) Carrying or possessing a loaded weapon in a motor vehicle, vessel, or other mode of transport.
I am submitting this report to the Yosemite Legal Office for further review and prosecution.
**END OF REPORT**

---

Printed by #A28 ANDERSON, S. Valid as of August 23, 2023 at 01:02

# Placeholder

**Description: Opposition Exhibits 2 & 3**

**Total Size: 1.56GB**

**Total Count: 2 Files**

Placeholder